# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

Milwaukee Division

| | |
|---|---|
| Mathiew Rae Fox | ) Case No. _____ |
| | ) *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) Jury Trial: *(check one)* ☒ Yes ☐ No |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| | ) |
| | ) |
| Judge Heather Iverson, Attorney Thomas Anderson | ) |
| Jr., Sarah Ann Fox, Hollie Elizabeth White. | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names.)* | |

*U.S. District Court Wisconsin Eastern APR 30 2026 FILED Clerk of Court*

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Mathiew Rae Fox |
| Street Address | 2726 83rd St. |
| City and County | Kenosha - Kenosha County |
| State and Zip Code | Wisconsin, 53143 |
| Telephone Number | 262-203-3109 |
| E-mail Address | mathiew.fox@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Heather Iverson |
| Job or Title *(if known)* | Kenosha County Circuit Court Judge Branch 3 |
| Street Address | 3421 16th St. |
| City and County | Kenosha - Kenosha County |
| State and Zip Code | Wisconsin, 53144 |
| Telephone Number | Unknown |
| E-mail Address *(if known)* | Unknown |

Defendant No. 2

| | |
|---|---|
| Name | Heather Iverson |
| Job or Title *(if known)* | Kenosha County Circuit Court Judge Branch 3 |
| Street Address | 912 56th St. (Kenosha Court House) |
| City and County | Kenosha |
| State and Zip Code | Wisconsin, 53140 |
| Telephone Number | 262-653-2579 |
| E-mail Address *(if known)* | Unknojessica.Guajardo@wicourts.gov (Clerk) |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question                ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

42 U.S.C. § 1983; First Amendment to the United States Constitution; Fourteenth Amendment to the United States Constitution; 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 2202.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

    b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

    b.     If the defendant is a corporation

          The defendant, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

          Or is incorporated under the laws of *(foreign nation)* _____ , and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached Complaint for Violation of Civil Rights under 42 U.S.C. § 1983.

Plaintiff asserts First Amendment and Fourteenth Amendment claims arising from contempt-based speech, petitioning, and school/location restrictions entered in Kenosha County Circuit Court Case No. 2021FA000047. Defendant Heather Iverson is named in her official capacity only for prospective declaratory relief and, if legally available, narrowly tailored prospective relief concerning ongoing enforcement of those restrictions.

Plaintiff does not seek damages from Judge Iverson for judicial acts. Plaintiff does not ask this Court to decide custody, placement, support, divorce, contempt validity under Wisconsin law, or any domestic-relations merits. Plaintiff seeks prospective federal declarations only, as stated in the attached complaint.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached Complaint, Prayer for Relief.

As to Defendant Heather Iverson, Plaintiff seeks prospective declaratory relief and, only if legally available and necessary, narrowly tailored prospective relief concerning ongoing enforcement of the challenged contempt-based speech and school/location restrictions. Plaintiff does not seek damages from Judge Iverson for judicial acts.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   4/28/2026

Signature of Plaintiff

Printed Name of Plaintiff   Mathiew Rae Fox

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# United State District Court

# Eastern District of Wisconsin

Case No. _____

U.S. District Court
Eastern

APR 3 0 2026

FILED
Clerk of Court

**MATHIEW R. FOX,**
Plaintiff,

v.

**HEATHER IVERSON,** in her official capacity only for prospective declaratory relief and, if legally available, narrowly tailored prospective relief;

**SARAH ANN FOX;**

**THOMAS W. ANDERSON JR.;** and

**HOLLIE WHITE,**
Defendants.

---

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

*42 U.S.C. § 1983*

*FIRST AMENDMENT, FOURTEENTH AMENDMENT, DECLARATORY RELIEF, DAMAGES, AND JURY DEMAND*

---

1

## I. Nature of the Action

1.  This is a narrow civil-rights action under 42 U.S.C. § 1983.

2.  Plaintiff does not ask this Court to decide custody, placement, child support, divorce, contempt validity under Wisconsin law, best interests under Wis. Stat. § 767.41, or any domestic-relations merits.

3.  Plaintiff does not ask this Court to reverse, vacate, modify, or supervise the Wisconsin family-court case.

4.  Plaintiff challenges independent federal injuries caused by the use and ongoing enforcement risk of contempt-based speech, petitioning, and school-location restrictions that exceeded the contempt actually found, chilled protected oversight communications, and burdened Plaintiff's parent-child association without timely declaratory relief.

5.  The core mismatch is record-fixed. The circuit court expressly stated, "This Court does not find Mr. Fox's contempt for going to the school," but in the same ruling barred Plaintiff from the children's school and from "any location" where the children would be located except supervised visitation. Tr. 6/11/25:31:1-3, 31:20-23 (R.157).

6.  The court found contempt only "with respect to posting proceedings involving matters of the children." Tr. 6/11/25:31:4-6 (R.157).

7.  The written contempt order preserved the same mismatch: no contempt for the school incident, but school-and-location restrictions as purge conditions. Order and Finding of Contempt, Aug. 1, 2025, ¶¶2, 4(c) (R.151).

8.  Plaintiff seeks prospective declaratory relief against Defendant Judge Heather Iverson in her official capacity only. Plaintiff does not seek damages from Judge Iverson for judicial acts.

9.  Plaintiff seeks damages from nonjudicial private defendants only to the extent they jointly used, invoked, shaped, or participated in state contempt machinery to impose or maintain unconstitutional restrictions that caused independent federal injury.

10. This complaint is limited to the contempt order, the speech/petitioning restrictions, the school-location purge conditions, the post-hearing proposed-order path, and the absence of timely declaratory relief resolving the federal-rights injury.

2

## II. Jurisdiction and Venue

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

12. This Court has civil-rights jurisdiction under 28 U.S.C. § 1343(a)(3).

13. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(2) because the events occurred in Kenosha County, Wisconsin.

## III. Parties

### A. Plaintiff

15. Plaintiff Mathiew R. Fox is a Wisconsin resident.

16. Plaintiff is the respondent-father in Kenosha County Circuit Court Case No. 2021FA000047.

17. Plaintiff engaged in protected speech and petitioning activity, including communications to oversight entities, regulatory bodies, legal recipients, CPS-related recipients, and court-related channels concerning perceived misconduct, evidence preservation, and parent-child access restrictions.

### B. Defendant Heather Iverson

18. Defendant Heather Iverson is a Kenosha County Circuit Court Judge.

19. Plaintiff names Judge Iverson in her official capacity only for prospective declaratory relief and, if legally available, narrowly tailored prospective relief concerning ongoing enforcement of the challenged contempt-based speech and school-location restrictions.

20. Plaintiff does not seek damages from Judge Iverson for judicial acts, including hearings, rulings, findings, contempt adjudication, order entry, docket management, or ordinary adjudicative functions.

21. Plaintiff does not allege that a declaratory decree was violated.

3

22. Plaintiff alleges that declaratory relief was unavailable or functionally unavailable because he repeatedly sought clarification, vacatur, and correction in state court, but no merits declaration resolved the scope, constitutionality, or enforceability of the challenged restrictions before ongoing enforcement injury persisted. Mot. Clarification Clause 4C, July 25, 2025 (R.139); Mot. Dismiss Contempt, Aug. 4, 2025 (R.154); Suppl. Mem. Vacate Contempt, Aug. 26, 2025 (R.171).

## C. Defendant Sarah Ann Fox

23. Defendant Sarah Ann Fox is a private actor and the petitioner-mother in Kenosha County Case No. 2021FA000047.

24. Plaintiff does not allege liability merely because Sarah Fox was an opposing party, filed motions, testified, communicated with counsel, or sought relief.

25. Plaintiff alleges liability only to the extent Sarah Fox knowingly used, invoked, or participated in state contempt machinery to obtain or maintain restrictions that exceeded the contempt actually found and burdened Plaintiff's protected speech, petitioning, due process, and parent-child association.

26. Sarah Fox swore the affidavit supporting contempt and alleged two grounds: social-media posting and the school gift-delivery incident. Pet'r Mot. Contempt, Aff. ¶¶2-8 (R.109).

27. The court later rejected contempt on the school ground but imposed the school/location restrictions anyway. Tr. 6/11/25:31:1-23 (R.157); Order and Finding of Contempt ¶¶2, 4(c) (R.151).

## D. Defendant Thomas W. Anderson Jr.

28. Defendant Thomas W. Anderson Jr. is an attorney who represented Sarah Fox in the underlying family-court proceedings.

29. Plaintiff does not allege liability merely because Anderson represented Sarah Fox, filed motions, advocated in court, cross-examined witnesses, or submitted proposed orders.

30. Plaintiff alleges liability only to the extent Anderson used, shaped, or participated in state contempt machinery, with knowledge of Plaintiff's protected oversight activity and the no-contempt school finding, to seek or

4

maintain restrictions that exceeded the contempt actually found and caused independent federal injury.

31. Anderson filed the contempt motion on June 2, 2025, requesting contempt findings for both social-media posting and the school gift-delivery incident, sanctions, fees, and incarceration up to six months. Pet'r Mot. Contempt (R.109).

32. Anderson argued the alleged violations at the June 11 contempt hearing. Tr. 6/11/25:3:11-4:25 (R.157).

33. Anderson was directed to draft the contempt order. Tr. 6/11/25:32:7-9 (R.157).

34. Anderson later sent a post-hearing letter to Judge Iverson asking her to compare his proposed order to her notes and sign it after Plaintiff and his counsel did not approve the proposed order. Correspondence to Judge Iverson, July 24, 2025 (R.135).

## E. Defendant Hollie White

35. Defendant Hollie White is a private actor and nonparty to Kenosha County Circuit Court Case No. 2021FA000047.

36. Plaintiff does not allege liability merely because White privately communicated with others, reported concerns, viewed material, had disputes with Plaintiff, or participated in separate litigation.

37. Plaintiff alleges White's liability only to the extent the evidence shows that she knowingly supplied, transmitted, or coordinated information used by Sarah Fox and Anderson to invoke state contempt machinery against Plaintiff's protected speech, petitioning, and oversight communications.

38. White's inclusion is not speculative. Anderson's contempt-fee billing statement listed "Review E-mail from White" during the contempt-motion period. Anderson later confirmed on the record that a third party had seen the alleged social-media posts, that this information helped lead him to file the contempt motion, and that the third party was Hollie White. Affidavit of Attorney's Fees, billing statement (R.117); Tr. 8/13/25:14:15-16:18 (R.193).

39. Plaintiff alleges that White became state-linked only through her role in the contempt-triggering information flow that foreseeably produced state-imposed restrictions, including a jail-backed purge, compelled takedown, attorney-fee liability, and school/location exclusion.

5

40. Private persons may be liable under § 1983 when they are willful participants in joint action with state officials or jointly engaged with state authority in the challenged action. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). Plaintiff pleads White, Sarah Fox, and Anderson under that limited joint-action theory.

## IV. Factual Allegations

### A. The May 29 order was reduced to a June 9 written order containing broad speech language.

39. On June 9, 2025, the court entered an order arising from the May 29, 2025 hearing. Order, June 9, 2025 (R.112).

40. The June 9 order stated that the GAL reported Plaintiff had engaged in "a significant amount of dissemination of information about the case, including the Guardian ad Litem, through social media, including YouTube." Order ¶4 (R.112).

41. The same order stated that the GAL indicated the children were "not having any significant issues with trauma related to the visits" and "appear to be happy to spend time with the Respondent Father." Order ¶5 (R.112).

42. The GAL recommended eliminating supervised visitation. Order ¶7 (R.112).

43. The court nevertheless continued supervised visitation based on Plaintiff's alleged dissemination of information on social media and the indication that he intended to provide information concerning the case to the children. Order ¶¶8-9 (R.112).

44. The June 9 order broadly provided that neither party shall disseminate on any form of social media "any information concerning this case" or "pictures and/or information concerning the minor children." Order ¶10 (R.112).

45. The order required both parties to take down "any such pictures or information" within forty-eight hours from the time of the hearing. Order ¶11 (R.112).

46. The order separately provided that both parties must refrain from discussing anything related to the case with the minor children. Order ¶12 (R.112).

6

47. The breadth of Paragraph 10 matters federally because it reached beyond child-identifying images or direct communications with the children and extended to "any information concerning this case" on social media. Order ¶10 (R.112).

**B. Sarah Fox and Anderson initiated contempt on both speech and school-delivery theories.**

48. On June 2, 2025, Sarah Fox, through Anderson, filed a contempt motion. Pet'r Mot. Contempt (R.109).

49. The motion sought contempt for alleged violation of an order "prohibiting the posting of materials concerning this case on any social media platform." Pet'r Mot. Contempt ¶1 (R.109).

50. The motion also sought contempt for alleged violation of placement orders by "attempting to deliver gifts and materials" for one child directly to the child's school. Pet'r Mot. Contempt ¶2 (R.109).

51. The motion requested sanctions, attorney fees, costs, and incarceration at the Kenosha County Jail for a period not exceeding six months. Pet'r Mot. Contempt ¶3 (R.109).

52. Sarah Fox's supporting affidavit alleged that the May 29 order prohibited social-media posting concerning "anything related to our children including pictures and content related to our children." Sarah Fox Aff. ¶2 (R.109).

53. Sarah Fox alleged that less than twenty-four hours after court, Plaintiff posted two videos concerning the status of the case that included audio of the hearing. Sarah Fox Aff. ¶3 (R.109).

54. Sarah Fox further alleged that school staff told her Plaintiff showed up at school with gifts for the child's birthday and asked to present them directly to the child or walk onto the field to deliver them. Sarah Fox Aff. ¶¶5-6 (R.109).

55. Sarah Fox alleged both actions were contempt and requested a finding of contempt and sanctions. Sarah Fox Aff. ¶¶7-8 (R.109).

56. The court noticed the contempt hearing for June 11, 2025. Notice of Hearing, June 2, 2025 (R.110).

**C. At the contempt hearing, Anderson framed the case as speech contempt and school contempt.**

7

57. On June 11, 2025, the court called the contempt motion filed by Anderson. Tr. 6/11/25:3:11-16 (R.157).

58. Anderson alleged that at the May 29 hearing the court entered orders reflected in Paragraph 10 of the written order. Tr. 6/11/25:3:17-21 (R.157).

59. Anderson described Paragraph 10 as prohibiting either party from disseminating on social media "any information concerning this case" or pictures/information concerning the minor children. Tr. 6/11/25:3:21-25 (R.157).

60. Anderson alleged that Plaintiff posted a YouTube video addressing court decisions and rulings and containing audio from the May 29 hearing. Tr. 6/11/25:4:3-12 (R.157).

61. Anderson also alleged the school-delivery incident but acknowledged, "I don't think he actually saw the daughter at her school." Tr. 6/11/25:4:13-20 (R.157).

62. Anderson requested sanctions, including possible incarceration. Tr. 6/11/25:4:21-5:2 (R.157).

## D. The court advised Plaintiff of contempt consequences, including jail and compliance sanctions.

63. The court told Plaintiff that remedial contempt is imposed to force compliance and punitive contempt is imposed to punish past conduct. Tr. 6/11/25:5:11-13 (R.157).

64. The court advised that for remedial contempt it could order up to 180 days in jail and other sanctions or orders to make Plaintiff comply with previous court orders. Tr. 6/11/25:5:19-22 (R.157).

65. The court advised Plaintiff that he had the right to show inability to comply as a possible defense. Tr. 6/11/25:5:23-6:1 (R.157).

66. The court also read Local Court Rule CR 1-6 regarding photographing, broadcasting, and recording, and made it an order for every proceeding following the June 11 proceeding, including that proceeding. Tr. 6/11/25:6:3-23 (R.157).

67. The court directed the deputy to take Plaintiff's electronic devices for the proceeding. Tr. 6/11/25:6:24-7:16 (R.157).

## E. Plaintiff's testimony defeated the school-contempt allegation.

8

68. Plaintiff acknowledged going to the child's school but testified he did not go there to see the child. Tr. 6/11/25:10:6-10 (R.157).

69. Plaintiff testified he knew he had supervised placement and was not attempting to disobey the court order. Tr. 6/11/25:10:11-16 (R.157).

70. Plaintiff testified his purpose was to ensure the child received birthday gifts. Tr. 6/11/25:10:17-24 (R.157).

71. Plaintiff testified the gifts did not include letters or communication. Tr. 6/11/25:11:7-10 (R.157).

72. Plaintiff testified he did not ask to give the gifts directly to the child, did not ask to see the child, did not ask to talk to the child, and did not ask in any way to communicate with the child. Tr. 6/11/25:11:11-24 (R.157).

73. Plaintiff's counsel made an offer of proof that a recording would show Plaintiff asked only about delivering gifts and "at no point" asked to see the child, have the child brought to the office, or go to the child's classroom. Tr. 6/11/25:13:1-21 (R.157).

74. Anderson did not object to that offer of proof. Tr. 6/11/25:13:19-21 (R.157).

75. The court later expressly declined to find contempt on the school allegation. Tr. 6/11/25:31:1-3 (R.157).

**F. Plaintiff testified that the videos were private and directed to oversight, legal, and regulatory recipients.**

76. Plaintiff testified that his videos were not publicly posted as of the June 11 hearing. Tr. 6/11/25:13:23-14:8 (R.157).

77. Plaintiff testified that Respondent's Exhibit 2 identified the individuals with exclusive access to the private videos. Tr. 6/11/25:14:9-17 (R.157).

78. Plaintiff identified those recipients as state representatives, the Office of Lawyer Regulation, the Supreme Court, law firms, support groups, and Wisconsin legislators. Tr. 6/11/25:14:17-22 (R.157).

79. Plaintiff testified that those recipients were not the general public but specific individuals. Tr. 6/11/25:14:23-24 (R.157).

80. Plaintiff testified he used videos because evidence disproving allegations had been disregarded and because he wanted the Office of Lawyer Regulation

9

involved after he concluded the process was unfair. Tr. 6/11/25:15:10-20 (R.157).

81. Plaintiff testified that he viewed the private videos as equivalent to written letters sent to appropriate recipients, with video supplying the visual component. Tr. 6/11/25:15:21-16:2 (R.157).

82. Plaintiff testified that after the May 29 ruling he had not posted pictures, videos, audio, or anything pertaining to the children in the manner he understood the order to prohibit. Tr. 6/11/25:16:9-24 (R.157).

83. Plaintiff testified that if the court ordered deletion or withdrawal of access from senators, the Supreme Court, and OLR, he would comply and prove it. Tr. 6/11/25:16:25-17:7 (R.157).

84. Plaintiff testified that since May 29 he had not posted anything public to the best of his knowledge. Tr. 6/11/25:17:8-15 (R.157).

85. Plaintiff testified the intended recipients were the Supreme Court, OLR, state senators, and lawmakers, and that he did not intend public viewing after the May 29 admonishment or order. Tr. 6/11/25:19:9-16 (R.157).

86. On cross-examination, Plaintiff acknowledged that a post after May 29 concerned the court hearing and included audio of the GAL's recommendations about placement modification. Tr. 6/11/25:20:9-21:14 (R.157).

87. Plaintiff testified that the commentary concerned the GAL's recommendations and evidence he believed had been disregarded. Tr. 6/11/25:21:6-14 (R.157).

88. Plaintiff also testified about limited CPS communications: one specific video was shared with CPS in connection with a report and evidence, and Plaintiff testified on redirect that it was designed to make sure the child was protected. Tr. 6/11/25:27:17-29:20 (R.157).

## G. Respondent's Exhibit RE2 corroborated private, targeted sharing.

89. Respondent's Exhibit RE2, scanned June 11, 2025, contains screenshots of YouTube "Share video privately" screens. Exhibit RE2 (R.113).

90. The screenshots show videos marked "Private" and private-share windows listing specific invited recipients. Exhibit RE2 (R.113).

10

91. The recipients shown include legal, legislative, and oversight-related recipients, including law-firm addresses, legislative addresses, and OLR-related addresses. Exhibit RE2 (R.113).

92. Exhibit RE2 corroborated Plaintiff's testimony that the challenged communications were directed to specific recipients, not the general public. Tr. 6/11/25:14:9-24 (R.157); Exhibit RE2 (R.113).

93. The court nevertheless treated the public/private distinction as irrelevant. Tr. 6/11/25:31:7-13 (R.157); Order ¶3 (R.151).

## H. Anderson's billing and August 13 testimony place Hollie White in the contempt-triggering chain.

94. Anderson filed an affidavit of attorney's fees on June 13, 2025, seeking fees for contempt-related work from the May 29 hearing through the June 11 contempt hearing. Affidavit of Attorney's Fees (R.117).

95. The attached billing statement listed "Preparation of Pleadings (Motion)" and "Review videos" on May 30, 2025. Billing Statement (R.117).

96. The same contempt-fee statement listed "Review E-mail from White" on June 4, 2025. Billing Statement (R.117).

97. The same statement listed the June 11 contempt hearing before Judge Iverson and "Preparation of Order from Hearing / Instructions to Paralegal." Billing Statement (R.117).

98. The "White" entry therefore appeared inside the contempt-litigation billing sequence for which attorney fees were later imposed on Plaintiff. R.117; Order ¶4(d) (R.151).

99. On July 21, 2025, Plaintiff moved to compel document clarification concerning the "White" billing entry. Mot. Compel Clarification (R.128).

100. Plaintiff asked the court to require Anderson to compile and submit documentation, notes, or communications related to "White," identify White's role and legal relevance, and permit subpoena process if clarification was not provided. R.128.

101. Plaintiff stated that no individual named White was a party or disclosed witness, and that clarification was necessary to preserve due process and confirm whether improper third-party coordination occurred in contempt litigation for which Plaintiff was financially liable. R.128.

11

102.     At the August 13, 2025 hearing, the court identified the issue as Plaintiff's motion to compel Anderson "to compile, clarify and explain reference to White in the billing statement." Tr. 8/13/25:14:15-22 (R.193).

103.     Anderson responded that the billing entry concerned "a third party that indicated they had seen the social media posts that were in violation of this court's order." Tr. 8/13/25:14:23-15:3 (R.193).

104.     Anderson further stated that the information was "part of what ultimately led us to believe that we needed to file such a motion because it seemed to be a blatant disregard of the court's order." Tr. 8/13/25:15:3-6 (R.193).

105.     The court then clarified that White was "an individual he spoke with," and Anderson confirmed that was correct. Tr. 8/13/25:15:25-16:6 (R.193).

106.     Plaintiff asked whether it was Hollie White; the court asked Anderson; Anderson answered, "That's correct"; and the court stated, "It's Hollie White." Tr. 8/13/25:16:7-18 (R.193).

107.     Plaintiff alleges this record establishes a plausible contempt-triggering chain: White-sourced information; Anderson review; contempt motion; contempt hearing; jail-backed purge; speech restrictions; fee sanction; and school/location restrictions.

**I. The court found contempt for posting, found no contempt for school, but imposed school-location restrictions anyway.**

89. After testimony, the court stated: "This Court does not find Mr. Fox's contempt for going to the school." Tr. 6/11/25:31:1-3 (R.157).

90. The court found contempt only for "willful and knowing disregard of court orders with respect to posting proceedings involving matters of the children." Tr. 6/11/25:31:4-6 (R.157).

91. The court stated there was "no delineation between public and private." Tr. 6/11/25:31:7-13 (R.157).

92. The court imposed a 180-day jail sentence, stayed with purge conditions. Tr. 6/11/25:31:14-15 (R.157).

93. The purge conditions required removal of "all content of any type" in any form of social media or on the Internet involving court proceedings or children. Tr. 6/11/25:31:15-20 (R.157).

12

94. The court required proof of removal by sworn affidavit. Tr. 6/11/25:31:18-20 (R.157).

95. The court ordered Plaintiff not to visit the children's school and not to visit any location where the children would be located other than supervised visitation. Tr. 6/11/25:31:20-23 (R.157).

96. The court ordered Plaintiff to pay Anderson's attorney's fees for the hearing. Tr. 6/11/25:31:23-32:2 (R.157).

97. The court directed Anderson to draft the order. Tr. 6/11/25:32:7-9 (R.157).

98. The court later restated that Plaintiff must remove all content of any type, in any form, online or any other source involving court proceedings or the children. Tr. 6/11/25:32:25-33:6 (R.157).

99. The court restated that Plaintiff was not to visit the children's school. Tr. 6/11/25:33:8-10 (R.157).

100. The court restated that Plaintiff was not to visit any location where the children would be located other than supervised visitations. Tr. 6/11/25:33:11-14 (R.157).

101. The court warned that failure to follow the orders could result in Plaintiff serving the full 180 days in jail. Tr. 6/11/25:33:20-22 (R.157).

102. The court warned that continued violations could result in taking away Plaintiff's supervised placement. Tr. 6/11/25:33:23-34:1 (R.157).

103. The court later modified the timing, requiring content removal within 24 hours and an affidavit within seven days. Tr. 6/11/25:34:14-20 (R.157).

104. The mismatch between finding and sanction is the center of this complaint: the court rejected school contempt, yet imposed school/location restrictions as purge conditions for contempt found on a different ground. Tr. 6/11/25:31:1-23 (R.157).

## J. The written contempt order preserved and sharpened the mismatch.

105. On August 1, 2025, the court signed the written Order and Finding of Contempt. Order and Finding of Contempt (R.151).

106. The written order states the matter came on for Petitioner's motion and finding of contempt against Plaintiff for alleged violations of the June 9 order. Order ¶1 (R.151).

13

107. The written order states that the court did not find Plaintiff in contempt for his actions related to attempting to provide gifts to the minor daughter at school. Order ¶2 (R.151).

108. The written order states that the court did find Plaintiff in contempt for disobeying the court's order concerning the posting of additional materials concerning this case on social media platforms. Order ¶3 (R.151).

109. The written order states that Plaintiff's public/private argument was irrelevant because "there shall be no social media posts whatsoever." Order ¶3 (R.151).

110. The written order imposed a 180-day jail sentence stayed on purge conditions. Order ¶4 (R.151).

111. The written purge conditions required Plaintiff to remove all social-media content concerning the case within twenty-four hours. Order ¶4(a) (R.151).

112. The written purge conditions required Plaintiff to provide proof by sworn affidavit within seven days that he removed all social-media posts and would continue not to have any social-media posts concerning the case. Order ¶4(b) (R.151).

113. The written purge conditions required Plaintiff not to visit the school or any other location where the children are unless it is court-ordered supervised placement. Order ¶4(c) (R.151).

114. The written order required Plaintiff to pay Petitioner's counsel attorney fees and costs related to the hearing. Order ¶4(d) (R.151).

115. The written order states that Anderson shall draft the order from the hearing. Order ¶5 (R.151).

116. The written order did not identify any separate contempt finding, statutory finding, safety finding, best-interests finding, or independent legal basis for the school/location restrictions after expressly rejecting school contempt. Order ¶¶2-4(c) (R.151).

### K. The post-hearing proposed-order path left Plaintiff without timely merits clarification.

117. At the June 11 hearing, the court directed Anderson to draft the contempt order. Tr. 6/11/25:32:7-9 (R.157).

14

118. Anderson prepared a proposed Order and Finding of Contempt filed July 25, 2025. Proposed Order and Finding of Contempt (R.136).

119. The proposed order contained the same structure later signed: no contempt for the school-gift incident, contempt for social-media posting, public/private irrelevance, a stayed 180-day jail sentence, social-media purge terms, school/location restrictions, fee payment, and Anderson-drafted order language. Proposed Order ¶¶2-5 (R.136).

120. On July 24, 2025, Anderson sent a letter to Judge Iverson stating that he had drafted the order after the June 11 hearing, submitted it to Attorney Losey on June 12, made requested changes, and learned Attorney Losey and Plaintiff would not approve the proposed order. Correspondence to Judge Iverson, July 24, 2025 (R.135).

121. Anderson asked Judge Iverson to review the proposed order against her notes and sign it. Correspondence to Judge Iverson, July 24, 2025 (R.135).

122. The July 24 letter was copied to Attorney Losey by e-file and Ms. Fox by email. Correspondence to Judge Iverson, July 24, 2025 (R.135).

123. Plaintiff does not rely on the letter merely because Anderson advocated. Plaintiff relies on the sequence because the final order was entered after a proposed-order dispute and preserved a sanction that did not track the contempt actually found. R.135; R.136; R.151.

124. The June 11 hearing occurred on June 11, 2025. Tr. 6/11/25 (R.157).

125. The final written contempt order was signed August 1, 2025. Order and Finding of Contempt (R.151).

126. The delay between the oral ruling and signed order left Plaintiff subject to the enforcement risk of broad oral directives, disputed proposed order language, and unresolved school/location restrictions.

127. The defect is not merely that the order was adverse to Plaintiff. The defect is that the final order, entered after a post-hearing proposed-order dispute, preserved a sanction that did not track the contempt actually found and left Plaintiff exposed to jail, loss of supervised placement, fees, and school/location exclusion without timely merits clarification.

15

**L. Plaintiff sought clarification and vacatur in state court before filing this federal complaint.**

128.     On July 25, 2025, Plaintiff filed a motion for clarification of Clause 4C of the contempt order. Mot. Clarification Clause 4C (R.139).

129.     Plaintiff stated that Clause 4C appeared to impose additional restrictions not specifically litigated, explained, or consented to during the hearing. Mot. Clarification ¶1 (R.139).

130.     Plaintiff explained that the language created ambiguity about whether he was prohibited from attending public extracurricular events involving the children where no contact or interference occurred, including school concerts, recreational sports games, and award ceremonies. Mot. Clarification ¶2 (R.139).

131.     Plaintiff stated that no affidavit supported or explained those specific restrictions, and that Anderson's affidavit related to attorney fees rather than the basis or scope of the contempt order. Mot. Clarification ¶¶3-4 (R.139).

132.     Plaintiff warned that the expanded language created risk of future litigation or contempt enforcement based on unclear restrictions. Mot. Clarification ¶4 (R.139).

133.     Plaintiff requested clear guidance on whether he could attend public, non-supervised events where no direct interaction occurred with the children. Mot. Clarification, Requested Relief (R.139).

134.     Plaintiff requested instruction necessary to prevent procedural exploitation or misinterpretation of the court's order. Mot. Clarification, Requested Relief (R.139).

135.     Plaintiff's supporting affidavit repeated that Clause 4C created ambiguity about whether he could attend public school or extracurricular events involving the children. Fox Aff. ¶2 (R.139).

136.     Plaintiff's supporting affidavit stated that no affidavit had been filed supporting the substance of Clause 4C and that Anderson's affidavit related only to a billing statement for attorney fees. Fox Aff. ¶3 (R.139).

16

137.     Plaintiff's supporting affidavit requested clarification to prevent future enforcement of unclear restrictions or additional contempt motions based on ambiguous language. Fox Aff. ¶6 (R.139).

138.     On August 4, 2025, Plaintiff moved to dismiss the contempt order and vacate sanctions. Mot. Dismiss Contempt (R.154).

139.     Plaintiff requested dismissal of the contempt order, vacatur of sanctions and adverse findings, and judicial acknowledgement that protected speech was mischaracterized and used as contempt. Notice of Motion (R.154).

140.     Plaintiff alleged that the content at issue was not about the children, was privately shared to a limited audience, and was directed toward oversight entities, including the Wisconsin Supreme Court and OLR, to report ethical misconduct and judicial concerns. Mot. Dismiss Contempt § I.A (R.154).

141.     Plaintiff alleged that treating those communications as contempt chilled protected oversight speech in violation of the First Amendment. Mot. Dismiss Contempt § I.A (R.154).

142.     Plaintiff alleged that the contempt motion was filed shortly after he began formal efforts to challenge court-actor conduct and file reports with oversight bodies. Mot. Dismiss Contempt § Id. (R.154).

143.     On August 26, 2025, Plaintiff filed a supplemental memorandum seeking to modify child support, vacate contempt, and correct the record. Suppl. Mem. (R.171).

144.     Plaintiff alleged that he had been sanctioned for exercising constitutional speech rights and argued that sanctions for protected speech violated the First Amendment. Suppl. Mem. Introduction & Point IV (R.171).

145.     Plaintiff requested vacatur of contempt sanctions based on constitutionally protected speech. Suppl. Mem. Requested Relief ¶3 (R.171).

146.     These filings sought declaratory-type clarification, vacatur, and correction from the issuing court before Plaintiff turned to federal court.

147.     The state-court record did not provide a merits declaration resolving the scope, constitutionality, or enforceability of the speech and school/location restrictions before ongoing enforcement injury persisted.

17

**M. The Court of Appeals did not resolve the school/location mismatch on the merits.**

148.    Plaintiff appealed the contempt order in Wisconsin Court of Appeals Case No. 2025AP002229.

149.    The Court of Appeals affirmed.

150.    The Court of Appeals held that contempt could stand because Plaintiff testified that a video included audio from the May 29 hearing of the GAL's placement recommendations and therefore pertained to the children. Ct. App. Op. ¶¶7-10.

151.    The Court of Appeals noted in a footnote that the circuit court "did not find Mathiew in contempt for going to his child's school after he testified he did not make any attempt to communicate with the child." Ct. App. Op. ¶5 n.4.

152.    The Court of Appeals did not separately analyze whether school-and-location restrictions could lawfully stand as contempt purge conditions after the circuit court expressly rejected contempt on the school allegation. Ct. App. Op. ¶¶11-13.

153.    The Court of Appeals rejected the remaining constitutional and school/location arguments as undeveloped rather than deciding them on the merits. Ct. App. Op. ¶¶11-13.

154.    Plaintiff filed a petition for review in the Wisconsin Supreme Court.

155.    The petition framed the narrow issue as whether remedial contempt under Wis. Stat. § 785.04(1) may impose categorical school-and-location restrictions as purge conditions after the circuit court expressly declined to find contempt on the school allegation. Pet. Review, Issue Presented.

156.    The petition identified the same mismatch: contempt was found for social-media violations, no contempt was found for the school allegation, yet school-and-location restrictions were imposed. Pet. Review, Statement of Facts; Argument.

157.    Wisconsin Supreme Court review is discretionary.

158.    The discretionary review path did not provide timely declaratory relief capable of preventing ongoing irreparable injury while the restrictions remained enforceable.

18

## N. Declaratory relief was unavailable or functionally unavailable.

159. Plaintiff does not allege that a declaratory decree was violated.

160. Plaintiff alleges that declaratory relief was unavailable or functionally unavailable because he repeatedly sought clarification, vacatur, and correction from the issuing court and sought appellate review, but no merits declaration resolved the ongoing federal-rights injury.

161. Plaintiff sought clarification before future contempt enforcement occurred. R.139.

162. Plaintiff sought vacatur based on First Amendment and due-process grounds. R.154; R.171.

163. Plaintiff sought discretionary review in the Wisconsin Supreme Court on the precise finding/sanction mismatch. Pet. Review.

164. The ongoing injury is not only the existence of an adverse state order. The injury is the continued enforcement risk of contempt-backed speech and school/location restrictions that chill protected petitioning, burden parent-child access, and cannot be fully repaired by delayed review.

165. Parent-child time lost under an unsupported restriction cannot be restored retroactively.

166. Protected oversight and petitioning speech chilled by jail-backed contempt threats cannot be fully repaired after the fact.

167. The absence of timely merits clarification left Plaintiff with an immediate enforcement risk: jail, fees, loss of supervised placement, compelled removal of speech, and exclusion from school and public child-related locations. Tr. 6/11/25:31:14-34:20 (R.157); R.151.

---

## V. Claims for Relief

### Count I — First Amendment Retaliation and Petitioning Burden

### Against Sarah Fox, Thomas W. Anderson Jr., and Hollie White

168. Plaintiff realleges paragraphs 1-167.

169. Plaintiff engaged in protected speech and petitioning activity by communicating with oversight entities, OLR-related recipients, the

19

Wisconsin Supreme Court, law firms, legislators, CPS-related recipients, and legal or regulatory channels. Tr. 6/11/25:14:17-24, 15:10-16:2, 19:9-16, 27:17-29:20 (R.157).

170. Plaintiff's protected activity included reporting perceived misconduct, preserving evidence, seeking oversight, and attempting to obtain review.

171. Sarah Fox and Anderson knew or had reason to know that the communications involved court-related criticism, oversight, and litigation-related communications because the contempt motion and hearing targeted videos concerning the case and hearing audio. R.109; Tr. 6/11/25:3:17-4:12 (R.157).

172. Sarah Fox and Anderson used contempt machinery to characterize protected oversight communications and nonpublic communications as sanctionable conduct. R.109; Tr. 6/11/25:3:17-4:25 (R.157).

173. White is not sued merely for private reporting. Plaintiff alleges White is liable only if and to the extent the evidence shows knowing participation in the contempt-triggering information flow that Anderson used to invoke state contempt power.

174. Anderson's contempt-fee statement listed "Review E-mail from White" during the contempt-motion period, and Anderson later confirmed that the White-related information came from a third party who saw the alleged social-media posts and helped lead him to file the contempt motion. R.117; Tr. 8/13/25:14:15-16:18 (R.193).

175. The contempt sequence resulted in adverse consequences: a contempt finding, a stayed 180-day jail sentence, takedown requirements, sworn affidavit requirements, attorney-fee exposure, school/location restrictions, and warnings that continued violations could result in jail or loss of supervised placement. Tr. 6/11/25:31:14-34:20 (R.157); R.151.

176. Those consequences would chill a person of ordinary firmness from continuing protected oversight, petitioning, and legal-preservation activity.

177. Plaintiff alleges the private defendants' conduct was fairly attributable to state action because they jointly invoked, shaped, supplied, or participated in the use of state contempt machinery to cause state-imposed restrictions and enforcement consequences. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980).

20

178. Plaintiff seeks compensatory damages, nominal damages, and, if proven, punitive damages against the nonjudicial defendants on this count.

## Count II — Fourteenth Amendment Due Process:

### Untethered Contempt Sanction against Iverson for Declaratory/Prospective Relief; Against Sarah Fox and Anderson for Damages if State Action Is Proven

178. Plaintiff realleges paragraphs 1-177.

179. The Fourteenth Amendment protects against deprivation of liberty and property without due process.

180. Plaintiff's liberty interests include familial association, ordinary lawful parent-child access opportunities, and freedom from jail-backed enforcement conditions not tethered to the contempt actually found.

181. Plaintiff's property interests include money imposed through contempt-related attorney-fee sanctions, compliance costs, and litigation costs caused by the challenged enforcement sequence.

182. The contempt found was social-media related. Tr. 6/11/25:31:4-6 (R.157); Order ¶3 (R.151).

183. The circuit court expressly found no contempt on the school allegation. Tr. 6/11/25:31:1-3 (R.157); Order ¶2 (R.151).

184. The same ruling and written order imposed school/location restrictions as contempt purge conditions. Tr. 6/11/25:31:20-23 (R.157); Order ¶4(c) (R.151).

185. The sanction did not track the contempt actually found.

186. The record does not show a separate finding, independent legal basis, safety finding, best-interests finding, or narrow tailoring supporting the school/location restrictions after the court rejected school-related contempt. Tr. 6/11/25:31:1-23 (R.157); R.151.

187. Plaintiff sought clarification because the restriction was not specifically litigated, explained, or consented to, and because it created uncertainty about public child-related events where no contact would occur. R.139.

Case 2:26-cv-00772-BHL    Filed 04/30/26    Page 26 of 30    Document 1

188. No timely merits declaration resolved whether the school/location restrictions could be enforced despite the no-contempt school finding.

189. Plaintiff seeks declaratory relief against Defendant Iverson in her official capacity only.

190. Plaintiff seeks damages against Sarah Fox and Anderson only if Plaintiff proves they jointly used state contempt machinery to obtain or maintain those restrictions despite the mismatch between finding and sanction.

### Count III — Fourteenth Amendment Familial Association: Ongoing Irreparable Parent-Child Access Injury

### Against Iverson for Declaratory/Prospective Relief; Against Private Defendants if State Action Is Proven

191. Plaintiff realleges paragraphs 1-190.

192. Plaintiff has a constitutionally protected interest in familial association with his children. The Fourteenth Amendment protects a parent's fundamental liberty interest in the care, custody, and management of his children. **Santosky v. Kramer,** 455 U.S. 745, 753 (1982); Troxel v. Granville, 530 U.S. 57, 65-66 (2000).

193. Plaintiff does not ask this Court to decide placement or best interests.

194. Plaintiff challenges contempt-based restrictions that barred him from the children's school and any location where the children would be located other than supervised visitation, even though no contempt was found on the school allegation. Tr. 6/11/25:31:1-23 (R.157); Order ¶¶2, 4(c) (R.151).

195. The restrictions chilled Plaintiff's ability to attend public events involving the children where no contact or interference would occur.

196. Plaintiff specifically sought clarification whether he could attend public extracurricular events, school concerts, recreational sports games, and award ceremonies where no contact or interference occurred. R.139.

197. At the August 13 hearing, Plaintiff explained that the order prevented parent-child bonding and ordinary attendance at events such as soccer. Tr. 8/13/25:19:18-20:17 (R.193).

22

198. When Plaintiff asked whether that meant he could not attend a soccer event for his son, the court answered, "Correct." Tr. 8/13/25:21:3-6 (R.193).

199. The court warned that failure to follow the restrictions could result in 180 days in jail. Tr. 6/11/25:33:20-22 (R.157).

200. The court warned that continued violations could result in taking away Plaintiff's supervised placement. Tr. 6/11/25:33:23-34:1 (R.157).

201. Parent-child time lost under an unsupported restriction cannot be restored retroactively.

202. Plaintiff alleges the ongoing enforcement risk caused irreparable parent-child access injury and chilled lawful attendance at ordinary public events involving the children.

203. Plaintiff seeks declaratory relief and, if legally available, narrow prospective relief preventing future enforcement of the challenged restrictions beyond constitutionally permissible limits.

**Count IV — Declaratory Relief and Alternative Narrow Prospective Relief Against Iverson in Official Capacity Only**

202. Plaintiff realleges paragraphs 1-201.

203. Plaintiff seeks a declaration that school-and-location restrictions may not be enforced as remedial contempt purge conditions absent a contempt finding or independent lawful basis supporting those restrictions.

204. Plaintiff seeks a declaration that protected oversight communications, regulatory complaints, legal-preservation communications, and nonpublic petitioning activity may not be treated as contemptuous absent constitutionally adequate findings and narrow tailoring. The First Amendment protects the right to petition, including court- and government-directed petitioning activity. BE&K Constr. Co. v. NLRB, 536 U.S. 516, 524-25 (2002).

205. Plaintiff does not allege that a declaratory decree was violated.

206. Plaintiff alleges declaratory relief was unavailable or functionally unavailable because he repeatedly sought clarification, vacatur, and correction in state court, including through the July 25 clarification motion, the August 4 motion to dismiss contempt, and the August 26 supplemental

23

memorandum, but no merits declaration resolved the ongoing federal-rights injury. R.139; R.154; R.171.

207. The Court of Appeals affirmed without separately deciding whether the school/location restrictions could stand as purge conditions after the no-contempt school finding. Ct. App. Op. ¶¶11-13.

208. Wisconsin Supreme Court review is discretionary and did not provide timely relief from ongoing enforcement risk while the restrictions remained operative.

209. If declaratory relief is inadequate to prevent ongoing enforcement injury, Plaintiff seeks narrowly tailored prospective relief prohibiting enforcement of the challenged restrictions beyond constitutional limits.

210. Plaintiff does not seek an injunction requiring the federal court to supervise custody, placement, support, or family-court administration.

## VI. Damages

211. Plaintiff seeks compensatory damages from nonjudicial defendants only.

212. Plaintiff's damages include contempt-related attorney-fee exposure, costs of responding to and attempting to clarify or vacate contempt restrictions, lost time, compliance costs, transcript or filing expenses, and other out-of-pocket losses caused by the challenged contempt sequence.

213. Plaintiff seeks nominal damages for violations of First Amendment and Fourteenth Amendment rights.

214. Plaintiff seeks punitive damages against nonjudicial defendants only if discovery proves reckless or malicious use of state contempt machinery to suppress protected petitioning or impose untethered access restrictions.

215. Plaintiff does not seek damages from Judge Iverson for judicial acts.

## VII. Prayer for Relief

Plaintiff respectfully asks this Court to enter judgment as follows:

24

A. Declare that school-and-location restrictions may not be enforced as remedial contempt purge conditions absent a contempt finding or independent lawful basis supporting those restrictions;

B. Declare that protected oversight communications, regulatory complaints, legal-preservation communications, and nonpublic petitioning activity may not be treated as contemptuous absent constitutionally adequate findings and narrow tailoring;

C. Declare that declaratory relief was unavailable or functionally unavailable within the state proceedings because Plaintiff repeatedly sought clarification, vacatur, and correction but no merits declaration resolved the ongoing federal-rights injury;

D. If declaratory relief is inadequate, issue narrowly tailored prospective relief preventing enforcement of the challenged restrictions beyond constitutional limits;

E. Award compensatory damages against Sarah Fox, Thomas W. Anderson Jr., and Hollie White to the extent liability is proven;

F. Award nominal damages for constitutional violations;

G. Award punitive damages against nonjudicial defendants if proven;

H. Award taxable costs and any other relief permitted by law;

I. Grant a jury trial on all triable issues.

---

## VIII. Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated this 28th Day of April, 2026.

**Mathiew R. Fox**
Plaintiff, Pro Se
2726 83rd St.
Kenosha, WI 53143
(262) 203-3109
Mathiew.fox@gmail.com

25